IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00513-KLM

MARY E. SPENDRUP, individually and on behalf of Quentin O. Spendrup,

   Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation,

   Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendant's Motion for [Partial] Summary Judgment Pursuant to F.R.C.P. 56(c)** [#32][1] (the "Motion"). On December 20, 2013, Plaintiff filed a Response [#43]. On January 10, 2014, Defendant filed a Reply [#50]. The Court has reviewed the Motion, the Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#32] is **GRANTED**.

**I. Background**

This dispute stems from a March 5, 2009 automobile accident involving Plaintiff's husband, Quentin O. Spendrup ("Mr. Spendrup") and a third party, which resulted in the death of Mr. Spendrup. *Am. Compl* [#49] at ¶¶ 41-42; *Answer* [#13] ¶ 2. Plaintiff accepted

---

[1] "[#32]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Order.

an offer of settlement for the third party driver's liability. *Am. Compl* [#49] at ¶¶ 49-50; *Answer* [#13] ¶ 2. In this lawsuit, Plaintiff seeks payment of underinsured motorist ("UIM") benefits from Defendant under various insurance policies issued by Defendant to Plaintiff, Mr. Spendrup, and their son, Zedadiah O. Spendrup. *Am. Compl* [#49] at ¶¶ 12, 15-20, 25-28, 51, 53; *Answer* [#13] ¶ 2. Plaintiff asserts the following claims against Defendant: negligence, negligence per se pursuant to Colo. Rev. Stat. § 42-4-603, negligence per se pursuant to Colo. Rev. Stat. § 42-4-703, negligence per se pursuant to Colo. Rev. Stat. § 42-4-605, negligence per se pursuant to Colo. Rev. Stat. § 42-4-1402, breach of contract, and statutory bad faith pursuant to Colo. Rev. Stat. § 10-3-1115(2). *Am. Compl.* [#49] at 6-12. With regard to each of the negligence claims, Plaintiff alleges that "Defendant . . . as [P]laintiff's underinsured motorist carrier is responsible for the uncompensated damages caused by [the third-party driver] and has refused to pay . . . ." *See, e.g., id.* at 7. Plaintiff seeks a declaratory judgment regarding her rights under the insurance contracts, damages, interest, fees, and costs. *Id.* at 12-13.

## II. The Motion

In the Motion, Defendant seeks summary judgment on Plaintiff's bad faith claim. Defendant argues that Plaintiff's filing of the instant litigation suspended its obligation to pay disputed amounts under Plaintiff's UIM benefit claim. *Motion* [#32] at 5-7. In support of that argument, Defendant maintains that prior to and at the time of the filing of this lawsuit, a genuine disagreement existed as to the amount of compensable damages payable to Plaintiff for her UIM claims. *Id.* at 7-10.

In her Response, Plaintiff argues that her bad faith claim is based solely on Defendant's failure to pay "undisputed amounts of benefits" under the applicable insurance

policies. *Response* [#43] at 6. Plaintiff bases this argument on the expert valuations of Plaintiff's damages exchanged by the parties, deposition testimony of an employee of Defendant regarding statutory noneconomic losses, and certain internal valuations by Defendant that value Plaintiff's claim below the range provided by Defendant's expert. *Id.* at 6-9. Plaintiff also mentions a settlement offer made by Defendant to Plaintiff. *Id.* at 12-13. She further argues that Defendant is not entitled to summary judgment on her bad faith claim even if the claim is "fairly debatable." *Id.* at 9-13. Plaintiff maintains that "there is a genuine issue as to the material fact of whether or not [Defendant] had a reasonable basis for denial and delay of undisputed benefits under [Plaintiff's] insurance policies" and that, therefore, a jury could conclude that Defendant's failure to pay the allegedly undisputed amount of benefits was unreasonable. *Id.* at 12-13.

In its Reply, Defendant revisits its arguments in favor of summary judgment and attacks Plaintiff's argument that Defendant should have paid allegedly undisputed insurance policy benefits. The Court notes that Defendant focuses most of its Reply on Plaintiff's use of a settlement offer made by Defendant. As Defendant notes, Fed. R. Evid. 408 prohibits the use of settlement offers "to prove or disprove the validity or amount of a disputed claim . . . ." Fed. R. Evid. 408(a). Accordingly, the Court does not address the alleged settlement offer and does not consider any information relating to offers to settle included in the documents submitted by the parties. *See, e.g., Motion*, Ex. E [#32-4]. With regard to Plaintiff's allegation that Defendant should have paid some amount of the UIM benefits based on the expert valuations of damages exchanged by the parties, Defendant argues that Plaintiff offers no legal authority for her arguments and, instead, "rests exclusively on the legal argument of her counsel . . . ." *Reply* [#50] at 2.

3

### III. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't. of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission*

*Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l., Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [the] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

### IV. Material Undisputed Facts

The parties offer competing material undisputed facts. After a review of the pleadings and supporting documents offered by the parties, the Court finds that the following are material undisputed facts relating to the Motion.

- In December 2010, with Defendant's consent, Plaintiff accepted $985,000 in settlement of her claims against the third party driver. *See Motion, Exs. C* [#32-2], *D* [#32-3]; *see also Am. Compl* [#49] at ¶¶ 49-50; *Answer* [#13] ¶ 2; *Motion* [#32] at 3; *Response* [#43] at 3.

- On September 27, 2011, Defendant sent Plaintiff an analysis stating that, according to its expert, her damages totaled $822,873-$1,275,602. *See Response, Ex. 2* [#43-2] ("September 2011 Valuation") at § I.

- Plaintiff initiated this litigation on March 5, 2012 in state court. *See Compl.* [#1-6] at 13; *see generally State Court Docket Sheet* [#1-4].[2]

### V. Analysis

Pursuant to Colo. Rev. Stat. § 10-3-1115, an insurer "shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). The statute states that "an insurer's delay or denial was

---

[2] On February 27, 2013, Defendant removed the case to federal court based on diversity jurisdiction, 28 U.S.C. § 1332. *See generally Defendant's Notice of Removal of Action* [#1].

5

unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis . . . ." Colo. Rev. Stat. § 10-3-1115(2). "What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012).; *see also Baker v. Allied Prop. & Cas. Ins. Co.*, 939 F.Supp.2d 1091, 1108 (D. Colo. 2013).

Defendant argues that its duty of good faith and fair dealing was suspended by this litigation and that, as a result, it had no duty to advance payment to Plaintiff. In *Bucholtz v. Safeco Ins. Co. of Am.*, 773 P.2d 590, 593 (Colo. App. 1988), the Colorado Court of Appeals held that summary judgment was properly granted on plaintiff's claims for bad faith breach of an insurance contact because the plaintiff demanded arbitration, thereby suspending the insurance company's duty to negotiate settlement. The court stated: "[A]lthough the insurer's duty of good faith and fair dealing continues unabated during the life of the insurer-insured relationship, any obligation to negotiate as a reflection of good faith may be suspended temporarily by collateral circumstances." *Id.* at 592. The court found that a request for arbitration was such a circumstance. *Id.* at 593. "The court also found that there must be a 'genuine disagreement' as to the amount of compensable damages payable for there to be an effective suspension of the insurer's duty." *Toy v. Am. Family Mut. Ins. Co.*, 12-cv-01683-PAB-MJW, 2012 WL 5290266, at *1 (D. Colo. Oct. 26, 2012) (citing *Bucholtz*, 773 P.2d at 593 and *Vaccaro*, 275 P.3d at 759). As this Court has previously found, "where an adversarial proceeding is filed and a genuine disagreement as to the amount of compensable damages exists, the duty to negotiate is suspended, *and*

*there is no duty to advance payment of claims.*"  *Baker*, 939 F.Supp.2d at 1109 (emphasis added) (citing *Rabin v. Fidelity Nat'l Prop & Cas. Ins. Co.*, 863 F.Supp.2d 1107, 1113 (D. Colo. 2012)).

Here, there is no question that an "adversarial proceeding" was filed on March 5, 2012.  The dispute is whether there was a genuine disagreement as to the amount of compensable damages at that time.  From Defendant's perspective, the parties have not agreed to any amount of damages and the purpose of this litigation is to determine that amount.  However, Plaintiff takes the position that the UIM benefits range specified in Defendant's expert's report should be added to $436,070 in statutory noneconomic damages which Plaintiff believes she is owed.  *See Response* [#43] at 7.  Therefore, Plaintiff argues that there is a range of damages on which the experts allegedly agree that is undisputed.  *See Id.* ("Plaintiff asserts that a jury could find that not only was it unreasonable for American Family to deny Plaintiff the minimum amount of $273,943 but could find that it was unreasonable for Defendant not to pay the high end of Defendant's undisputed evaluation of $726,672.").

As an initial matter, Plaintiff's argument that $436,070 in noneconomic losses should be added to the valuation range provided by Defendant's expert fails as a matter of law.  Plaintiff cites to Colo. Rev. Stat. § 13-21-205(1).  *Id.* at 2, 7.  This appears to be an incorrect citation as there is no Colo. Rev. Stat. § 13-21-205.  The statute governing noneconomic loss is Colo. Rev. Stat. § 13-21-102.5 which, as revised, sets the recovery cap for claims brought pursuant to § 13-21-203(1) at $436,070.  However, recovery of noneconomic losses pursuant to § 13-21-203(1) is contingent on the Court finding that such an award is justified "by clear and convincing evidence . . ."  Colo. Rev. Stat. § 13-21-

203(1)(3)(b). Plaintiff's assumption that the maximum amount of potential noneconomic damages is undisputed because one of Defendant's employees stated in her deposition that she thought Plaintiff was entitled to the maximum amount allowed under the statute and that such an amount, therefore, should be added to Defendant's expert's valuation is erroneous. *See Response* [#43] at 4, 7. Testimony of an opinion of a single representative of Defendant does not amount to clear and convincing evidence that the full amount of noneconomic damages should be awarded. Accordingly, the Court will not consider the noneconomic damages alleged by Plaintiff as an undisputed amount. As a result, the only remaining issue is whether any amount of the UIM benefits valuation provided by Defendant's expert is undisputed.

Colorado insurance regulations provide helpful insight into this issue. 3 C.C.R. 702-5:5-1-14 governs penalties for an insurance company's failure to promptly address first-party claims, like those asserted here. It states:

> All insurers authorized to write property and casualty insurance policies in Colorado, shall make a decision on claims and/or pay benefits due under the policy within sixty (60) days after receipt of a valid and complete claim unless there is a reasonable dispute between the parties concerning such claim, and provided the insured has complied with the terms and conditions of the policy of insurance.

Under the statute, a "valid and complete claim" is deemed "received" by the insurer when, among other things, "[n]egotiations or appraisals to determine the value of the claim have been completed; and/or . . . [a]ny litigation on the claim has been finally and fully adjudicated." *Id.* § 4(A)(2)(a). Further, a "reasonable dispute" may include, among other things, the commencement of litigation or the existence of "[c]onflicting information" that necessitates additional investigation. *Id.* § 4(A)(2)(b).

8

In the instant case, litigation regarding the amount of damages, if any, due to Plaintiff is ongoing and the experts have offered conflicting opinions regarding the value of Plaintiff's claims. Further, at the time Plaintiff commenced this dispute, Defendant's expert's valuation of Plaintiff's damages was $822,873-$1,275,602. *See September 2011 Valuation* [#43-2] at § I; *see also Toy*, 2012 WL 5290266, at *2 (resolving discovery dispute and stating "the issue before the court is whether there was a genuine dispute *at the time plaintiff made his arbitration demand*").[3] As the basis for damages, Plaintiff alleges that "Defendant . . . as [P]laintiff's underinsured motorist carrier is responsible for the uncompensated damages caused by [the third-party driver] and has refused to pay . . . ." *Am. Compl.* [#49] at 7. In other words, Plaintiff seeks damages from Defendant for any amount of damages in excess of $985,000, the amount of the settlement with the third-party driver. The only defense valuation that pre-dates the initiation of this litigation and that has been provided to the Court presents a damages range of $822,873-$1,275,602. *See September 2011 Valuation* [#43-2] at § I. Clearly, the low end of this estimate is below the settlement amount of $985,000, which indicates that Defendant's position at the time the litigation was initiated is that it did not owe Plaintiff any UIM benefits.[4] Plaintiff admits that the estimate of $822,873-$1,275,602 does not include the $985,000 settlement amount by asserting in her Response that the $985,000 settlement amount should be subtracted

---

[3] Plaintiff's argument that the Court should consider valuations completed and exchanged as part of discovery after the initiation of the instant litigation is contrary to the Court's findings in *Toy*.

[4] A valuation range, by definition, does not mean that the party offering the range should be held to one particular amount within the range. Accordingly, for the limited purpose of deciding the Motion, the Court assumes without deciding that the amount to which Defendant can be alleged to have "agreed" is the low end of the range.

from the expert's range. *Response* [#43] at 7. Therefore, the Court finds that at the time this litigation was initiated, there was a genuine disagreement as to the amount of compensable damages and the parties had not reached agreement as to any amount of damages allegedly owed to Plaintiff. As a result, the Court finds that Defendant did not have a duty to advance payment of any amount to Plaintiff. In the absence of such a duty, Plaintiff's bad faith claim cannot survive. *See Baker*, 939 F.Supp.2d at 1109. Accordingly, the Motion [#32] is **GRANTED**.

### VI. Conclusion

IT IS HEREBY **ORDERED** that the Motion [#32] is **GRANTED**.

IT IS FURTHER **ORDERED** that when final judgment is entered in this case, judgment shall enter in favor of Defendant and against Plaintiff as to Plaintiff's statutory bad faith claim.

Dated: January 29, 2014

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge