IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00513-KLM

MARY E. SPENDRUP, individually and on behalf of Quentin O. Spendrup,

Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation,

Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendant's Rule 702 Motion to Preclude Jeffrey Opp From Offering Opinions Regarding Legal Issues** [#53][1] (the "Motion").  On January 31, 2014, Plaintiff filed a Response [#56].  On February 7, 2014, Defendant filed a Reply [#57].  The Court has reviewed the Motion, the Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Motion [#53] is **GRANTED in part**, as explained below.

## I.  Background

This dispute stems from a March 5, 2009 automobile accident involving Plaintiff's husband, Quentin O. Spendrup ("Mr. Spendrup") and a third party, which resulted in the death of Mr. Spendrup.  *Am. Compl* [#49] at ¶¶ 41-42; *Answer* [#13] ¶ 2.  Plaintiff accepted

_____

[1]  "[#53]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this Order.

an offer of settlement for the third party driver's liability.  *Am. Compl* [#49] at ¶¶ 49-50;

*Answer* [#13] ¶ 2.  Through this lawsuit, Plaintiff seeks payment of underinsured motorist

benefits from Defendant for various insurance policies issued by Defendant to Plaintiff, Mr.

Spendrup, and their son, Zedadiah O. Spendrup.  *Am. Compl* [#49] at ¶¶ 12, 15-20, 25-28,

51, 53; *Answer* [#13] ¶ 2.  Plaintiff seeks a variety of damages including "financial losses,"

which she alleges "are the same as the financial benefit [she] might reasonably have

expected to receive from" Mr. Spendrup.  *Am. Compl.* [#49] at ¶ 120.

Notably, prior to Mr. Spendrup's death, Plaintiff and Mr. Spendrup each owned 50%

of SMJ, Inc. ("SMJ") and each was paid a salary from SMJ.  *Motion for Determination of*

*Question of Law* [#39] at 2; *Response to Motion for Determination of Question of Law* [#45]

at 2.  Each "shared equally in the profits of SMJ."  *Motion for Determination of Question of*

*Law* [#39] at 2.  According to Plaintiff, SMJ was an 1120S corporation.  *Response to Motion*

*for Determination of Question of Law* [#45] at 2.  An "S" corporation is a small business that

must meet certain criteria set by the Internal Revenue Service.  *See* 26 U.S.C. § 1361(a)-

(b)(2).  Income and losses for an "S" corporation are passed through to the shareholders

of the corporation.  *See* 26 U.S.C. § 1366(a)(c).  In her Response to the Motion for

Determination of Question of Law, Plaintiff states that after Mr. Spendrup's death SMJ lost

money and was eventually sold.  *Response to Motion for Determination of Question of Law*

[#45] at 2.  Plaintiff claims that this was a result of Mr. Spendrup's death because "SMJ

customers wanted [Mr. Spendrup's] expertise, knowledge, and experience.  [He] could not

be replaced."  *Id.*

On January 15, 2014, the Court denied Defendant's Motion for Determination of

Question of Law.  *See generally Order* [#54].  The Court stated:

2

> Absent clear law limiting Plaintiff's net pecuniary loss in a wrongful death action to exclude future business profits, the Court will not limit the factual information available to the jury to reach a "fair and just " dollar value of that loss.  Hence, the parties may present the facts supporting their contentions regarding Plaintiff's entitlement to SMJ's lost profits and make their arguments in that regard.  The jury will decide the proper amount of damages, if any.

*Id.* at 5.

In the instant Motion, Defendant asks the Court to "preclude Plaintiff's economic expert, Jeffrey Opp, from offering opinions regarding legal issues."  *Motion* [#53] at 1. Defendant maintains that "based on the disclosed opinions of Mr. Opp, coupled with the representations made in Plaintiff's Response to Motion for Determination of Question of Law, the Defendant has very real concerns that the Plaintiff will offer Mr. Opp's *legal opinions* in her case in chief."  *Id.* at 3 (emphasis in original).  In support of this position, Defendant offers an October 20, 2013 letter from Mr. Opp to Andrew J. Peter [#53-1] (the "Opp Letter").  In the Opp Letter, Mr. Opp offers his opinions regarding certain issues raised by Defendant.  Among other things, Mr. Opp states:

> The computation of loss in a wrongful death action is based upon those amounts that would have inured to the benefit of the decedents' [sic] survivors had the death not occurred.  Clearly the amount generated by SMJ prior to Mr. Spendrup's death (be it claimed as wages to Mr. Spendrup or net income of the company) have [sic] been lost by his survivors.

*Opp Letter* [#53-1] at 2.  Defendant argues that any testimony provided by Mr. Opp that attempts to instruct the jury regarding what damages a plaintiff in a wrongful death case is entitled to recover is inadmissible pursuant to Fed. R. Evid. 702 and applicable case law. *Motion* [#53] at 3-4.

Plaintiff opposes the Motion.  In her Response, she states:

At trial on this matter, Plaintiff anticipates that the Court will instruct the jury

3

on C.R.S. § 13-21-202 and CJI-Civ. 4th 10:3 Damages For Wrongful Death. In accordance with this Court's ruling of January 15, 2014 denying Defendant's Motion for Determination of Question of Law, Plaintiff will elicit testimony from Jeffrey Opp supporting his expert belief that Mary Spendrup in entitled to SMJ's lost profits. Mr. Opp's opinion will be based on economic, financial, and tax principles as outlined in his reports provided in discovery. Plaintiff will ask Mr. Opp to testify as to the ultimate issue of why Mrs. Spendrup is entitled to 100% of the lost profits from SMJ Inc.

*Response* [#56] at 2. Plaintiff concludes by stating that she "does not intend to ask Mr. Opp his legal opinion regarding Colorado Law" but that she "does intend to elicit testimony from Jeffrey Opp supporting his expert belief that Mary Spendrup is entitled to SMJ's lost profits." *Id.* at 2.

In its Reply, Defendant states that "based on Plaintiff's Response, American Family continues to have very real concerns that Mr. Opp will attempt to offer legal opinions – the same legal opinions offered in his report – in the guise of explaining why the Plaintiff is entitled to lost profits from SMJ, Inc." *Reply* [#57] at 2. Defendant then renews its argument that such opinions are precluded by Fed. R. Evid. 702 and applicable case law. *Id.*

## II. Analysis

"Admission at trial of expert testimony is governed by Fed. R. Evid. 702, which imposes on the district court a gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). Rule 702 provides the foundational requirements for admission of expert opinions:

A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an

opinion or otherwise if:
(a)     the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b)     the testimony is based on sufficient facts or data;
(c)     the testimony is the product of reliable principles and methods; and
(d)     the expert has reliably applied the principles and methods to the facts of the case.

The district court's discretion in admitting or excluding expert testimony under *Daubert* is broad, "both in deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003). "The touchstone of admissibility of expert testimony is its helpfulness to the trier of fact." *United States Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1150 (10th Cir. 2009) (quotation marks and brackets omitted).

The proponent of expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1107 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 592 n.10). The proponent is not required to prove that the opinion is indisputably correct or even that the expert's theory is generally accepted in the scientific community. *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). Instead, the proponent must show that the witness has sufficient expertise to choose and apply a methodology, that the methodology was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied. *Id.*; *Daubert*, 509 U.S. at 595; *see also Dodge*, 328 F.3d at 1222. The burden on the proponent of the expert testimony is significant, as any inadequacy in the proof on any of

Rule 702's elements may render the entire opinion inadmissible.  *See Mitchell*, 165 F.3d at 782.

Pursuant to Fed. R. Evid. 704(a), an expert opinion "is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704; *see also Etherton v. Owners Ins. Co.*, No. 10-cv-00892-PAB-KLM, 2013 WL 68702, at *2 (D. Colo. Jan. 7, 2013).  An expert witness may testify regarding an ultimate issue of fact but may not offer an opinion that "articulates the ultimate principles of law governing the deliberations of the jury." *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) (en banc), *cert. denied*, 488 U.S. 1008 (1989).  An expert witness may refer to the law so long as he does not "state legal conclusions drawn by applying the law to the facts."  *A.E. By & Through Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991); *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998) ("Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts.").  Further, expert testimony is improper "when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based."  *Specht*, 853 F.2d at 810.  Therefore, "[w]hile testimony on ultimate facts is authorized under Rule 704, . . . testimony on ultimate questions of law is not favored."  *Id.* at 808.  "The basis for this distinction is that testimony on the ultimate factual questions aids the jury in reaching a verdict; testimony which articulates and applies the relevant law, however, circumvents the jury's decision-making function by telling it how to decide the case."  *United States Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1150 (10th Cir. 2009) (citing *Specht*, 853 F.2d at 808).  Therefore, "[t]he expert can *refer* to the law in expressing his opinion, but he may not tell the jury what legal standards

6

must guide their verdict." *MCC Mgmt of Naples, Inc. v. Int'l Bancshares Corp.*, 468 F.App'x 816, 821 (10th Cir. 2012) (table decision) (emphasis in original); *see also United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005 ) ("[A]n expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment." (citation omitted)).

Here, among other things, Plaintiff intends to solicit testimony from Mr. Opp regarding his opinion that Plaintiff "is entitled to 100% of the lost profits from SMJ Inc." *Response* [#56] at 2. Plaintiff specifically states that she intends to not only examine Mr. Opp about the amount of damages he believes she is entitled to, but to elicit his opinion about why she is entitled to those damages. *Id.* In the Opp Letter, Mr. Opp makes clear that in his opinion, "the amount generated by SMJ prior to Mr. Spendrup's death (be it claimed as wages to Mr. Spendrup or net income of the company) have [sic] been lost by" Plaintiff ("Opinion #1"). *Opp Letter* [#53-1] at 2. He further opines that "[t]he computation of loss in a wrongful death action is based upon those amounts that would have inured to the benefit of the decedents' [sic] survivors had the death not occurred." ("Opinion #2"). *Id.* Opinion #1 is proper; Opinion #2 is not. To the extent Mr. Opp offers opinion testimony regarding the total amount of damages he believes is due to Plaintiff and his calculations used to reach that number, Mr. Opp's testimony would not "circumvent[ ] the jury's decision-making function by telling it how to decide the case." *Specht*, 853 F.2d at 808. However, to the extent Plaintiff intends to solicit testimony regarding Mr. Opp's opinion that "[t]he computation of loss in a wrongful death action is based upon those amounts that would have inured to the benefit of the decedents' [sic] survivors had the death not

occurred," *Opp Letter* [#53-1] at 2, such opinion cannot be offered by Mr. Opp because it is "the court's duty to set forth the law." *Specht*, 853 F.2d at 808.  Further, Mr. Opp's opinion that certain amounts would have inured to the benefit of Plaintiff cannot be offered at trial because "the purpose of the testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based . . . ." *Id.* at 810.[2]

### III.  Conclusion

Accordingly, for the reasons stated above,

IT IS HEREBY **ORDERED** that the Motion [#53] is **GRANTED in part**.  At trial Mr. Opp may offer his expert opinion regarding the *factual* basis for the amount of damages owed to Plaintiff and his calculations relating to the amount of damages.  In doing so, he may properly refer to estimated future lost profits of SMJ, if his calculation of the amount of damages includes that estimate.  However, he may not offer an opinion regarding the *legal* basis for his computation of damages in a wrongful death case.

Dated:  February 20, 2014

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

---

[2]  The Court understands that Mr. Opp's damages calculations will include amounts based on Mr. Opp's belief that certain amounts would have inured to the benefit of Plaintiff as a result of Mr. Spendup's death.  Mr. Opp may include those amounts in his damages calculations and offer testimony regarding his calculations, including the fact that those amounts are included in his calculations.  However, Mr. Opp may not offer testimony regarding the legal conclusion that he believes that such amounts would have inured to the benefit of Plaintiff.